UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH A. ADAMS,                    Case No. 1:12-cv-823

    Plaintiff,                             Barrett, J.
                                            Bowman, M.J.

vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Kenneth Adams filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. See 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") in April 2009, alleging a disability on set date of October 1, 1999[1] due to physical impairments. Plaintiff was last insured for DIB on June 30, 2006. (Tr. 22). After Plaintiff's application was denied initially and upon reconsideration, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in March 2011, at which Plaintiff was represented by counsel. At the hearing, ALJ Christopher McNeil heard testimony from Plaintiff, medical expert Malcolm Brahms, M.D., and impartial vocational expert Janet

---

[1] At the administrative hearing, Plaintiff amended his disability onset date to January 1, 2001. (Tr. 66).

Rogers. On April 19, 2011, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled prior to his last date insured.[2]

The record reflects that Plaintiff was 62 years old at the time of the administrative hearing and a high school graduate. Plaintiff alleges disability based upon advanced ankylosing spondylitis, a form of inflammatory arthritis which affect the axial spine. He also suffers from internal derangement of his knees, hypertension, generalized osteoarthritis, and obesity. (Tr. 242-249, 250-256, 274-291). Plaintiff underwent surgical fusion on his spine in 1992, performed by Dr. Kahn, an orthopedic surgeon. Plaintiff saw Dr. Kahn again in 2009, due to the development of significant pain and reduced motion in his cervical spine. Dr. Kahn found that Plaintiff was unable to heel- or toe-walk well, he had a forward list to his gait; he had no motion in his spine; he had a contracture of his hips of approximately 30° and a loss of about 50% of his range of motion in his hips; no expansion of his ribs with breathing; and absent reflexes in his knees and ankles. (Tr. 260). Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "spondylitis and arthritis." (Tr. 24). The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one

---

[2]The pertinent period of time at issue concerns Plaintiff's work abilities and limitations between January 1, 2001 through June 30, 2006. To establish his claim for disability benefits, Plaintiff was required to establish that he was disabled on or before June 30, 2006, the date his insured status expired for purposes of Disability Insurance Benefits. *See Garner v. Heckler,* 745 F.2d 383, 390 (6th Cir.1984). While Plaintiff was not required to prove he was disabled for a full twelve months *prior* to the expiration of his insured status, he was required to prove "the onset of disability" prior to the expiration of his insured status and that such disability lasted for a continuous period of twelve months. *See Gibson v. Secretary,* 678 F.2d 653, 654 (6th Cir.1982); 42 U.S.C. § 423(d)(1)(A).

of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *(Id.)*. Rather, the ALJ determined that, through the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform medium work, described as follows:

> He could have occasionally lifted no more than a maximum of 50 pounds. He could have frequently lifted up to 25 pounds. He could have walked or stood for six hours in an eight hour workday. He could have sat for six hours in an eight-hour workday. He could have frequently stooped and crouched with flexibility in the knees and torso to lift weights of 25-50 pounds.

(Tr. 26). Based upon the record as a whole including testimony from the medical expert, vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform his past relevant work as a research technician and a packer. (Tr. 28). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations (prior to his last date insured) and is therefore not entitled to DIB. (Tr. 28).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by failing to address the Listings of Impairments; (2) improperly formulating Plaintiff's RFC; and (3) by improperly evaluating Plaintiff's credibility. Upon close inspection, the undersigned finds that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. § 1382c(a). Narrowed to its

3

statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .... The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe:" at Step 3, the Commissioner analyzes

whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir.2006); 20 C.F.R. § 404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

1. *Listing Analysis*

Plaintiff's first assignment of error asserts that the ALJ acted improperly by concluding that Plaintiff's impairments did not meet or equal the criteria in Listings 1.04 and 14.09C. Plaintiff contends that the ALJ failed to properly evaluate the Listing criteria and to provide sufficient explanation for his conclusion that Plaintiff's impairments did not meet or medically equal the Listings. Plaintiff's assertion lacks merit.

The Sixth Circuit recognizes that "[a]t step three of the evaluation process, it is the burden of the claimant to show that he meets or equals the listed impairment." *Thacker v. Soc. Sec. Admin.*, 93 F.App'x 725, 727-28 (6th Cir. 2004) (citing *Buress v. Sec'y of H.H.S.*,

835 F.2d 139, 160 (6th Cir. 1987). "When a claimant alleges he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Id.* at 728. *McDonald v. Astrue*, 2011 WL 800060 (S.D. Ohio Jan. 10, 2011) (Bowman, MJ) ("ALJ's finding that [the claimant's] combination of impairments did not meet or equal the Listings is sufficient to show that the ALJ considered the effect of the combination of impairments").

A plaintiff bears the burden of demonstrating all of the required medical criteria to satisfy a listing. *See Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) ("An impairment that manifests only some of those criteria, no matter how severe, does not qualify."); *Elam ex rel Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir.2003) (insufficient for claimant to come "close to meeting the requirements of a listed impairment") (additional citation omitted). In considering the Listing impairments, the Sixth Circuit recognizes that there is no "heightened articulation standard." *Bledsoe v. Barnhardt*, 165 F.App'x 408, 411 (6th Cir. 2006) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)). Rather, the Court reviews whether substantial evidence supports the ALJ's decision. *Id.*

In his decision, the ALJ found that Plaintiff failed to meet Listings 1.04 and 14.09 because there was insufficient credible evidence establishing that the severity of his impairments met the criteria for each Listing prior to the date last insured of June 30, 2006. (Tr. 26).

Notably, Listing 1.04 provides:

> Disorders of the spine ... resulting in compromise of a nerve root .... [w]ith

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, 1.04. Restated, for Plaintiff to have been found disabled at step three, he must have had (1) a spinal disorder that (2) result[ed] in "compromise of a nerve root" with (3) "neuro-anatomic distribution of pain," (4) "limitation of motion of the spine," and (5) motor loss (muscle weakness) accompanied by (6) sensory or reflex loss. *Id.*

Additionally, Listing 14.09 relates to inflammatory arthritis. To meet this Listing Plaintiff must have inflammatory arthritis with ankylosing spondylitis or other spondyloarthropathies, with: (1) ankylosis (fixation) of the dorsolumbar or cervical spine measuring 45 degrees or more of flexion from the vertical position; or (2) ankylosis (fixation) of the dorsolumbar spine measuring between 30-45 degrees of flexion from the vertical position, and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity. See 20 C.F.R. Part 404 Subpart P, Appendix 1, § 14.09(C).

Here, the ALJ recognized the medical expert's (Dr. Brahm) testimony that since Plaintiff's spinal fusion in 1992, his ankylosing spondolylitis has met the criteria of Listing 1.04 due to his alleged complete loss of spinal motion and also met the criteria for Listing 14.09 for inflammatory arthritis. (Tr. 39, 41). The ALJ also noted the findings of Dr. Kahn, Plaintiff's treating physician in his Listing evaluation. Notably, in July 2009, Dr. Kahn examined Plaintiff and noted that he could not heel or toe walk well, had a forward list, had

no motion in the spine, and had diminished motion in his hips. (Tr. 259). Dr. Kahn also noted that Plaintiff's neurological exam was abnormal with absent reflexes at the knees and ankles, but with normal motor and sensory, and no atrophy. (Tr. 259). Dr. Kahn diagnosed Plaintiff with ankylosing spondylitis affecting all joints with no spine motion, no rib motion, and significant involvement of the hips. (Tr. 259). Additionally, in March 2011, Dr. Kahn opined that Plaintiff was permanently disabled. (Tr. 302). However, the ALJ rejected the opinions of Dr. Brahm and Dr. Kahn because they were not supported by the record and did not relate back to Plaintiff's last date insured.

As noted by the Commissioner, the ALJ rejected Dr. Brahm's January 2011 opinion that Plaintiff met the criteria of Listing 1.04C as of August 1992, several years before the alleged onset date of October 1, 1999. (Tr. 25-27). However, the ALJ noted that Dr. Brahm's opinion was based on the mistaken belief that Plaintiff sustained a complete loss of spinal motion in August 1992, which was contradicted by the record, as noted below. (Tr. 25, 27, 271-72). The ALJ also noted that Plaintiff underwent spinal fusion surgery in August 1992 and that Dr. Kahn noted he "looked absolutely super" and functioning reasonably well a month after surgery (Tr. 25, 263-64). Dr. Kahn also noted that in November 1992 that Plaintiff was doing quite well and had been using a chainsaw. (Tr. 25, 262). Significantly, Dr. Kahn indicated that Plaintiff's spine was totally fused and allowed him to return to work on April 13, 1993. (Tr. 25, 261). The ALJ noted that Dr. Kahn limited Plaintiff to sedentary work in 1993; yet Plaintiff in fact worked at a medium and/or light level position until 2000. (Tr. 27, 261).

With respect to Listing 14.09, the ALJ determined that Plaintiff failed to meet Listing 14.09 because there was not sufficient credible evidence establishing that the severity of

Plaintiff's impairments met the Listing criteria, including arthritis, prior to the date last insured of June 30, 2006. The ALJ also noted that the record does not contain any medical records from January 1994 through February 2002. (Tr. 25). Specifically, ALJ noted that although Plaintiff's x-rays in May 2005 showed multiple right rib fractures prior to the date last insured, there was no evidence of arthritis or the signs and findings needed to meet Listings 14.09 (Tr. 25-26, 281). The ALJ also indicated that Plaintiff's musculoskeletal exam in May 2005 by Dr. Fenton was otherwise within normal limits, aside from showing some tenderness just medial to the left mid scapula. (Tr. 25, 252). The ALJ also considered, but did not accept Dr. Kahn's opinions in July 2009 and March 2011 in determining whether Plaintiff met or equaled the Listing 14.09. Notably, the ALJ noted that Dr. Kahn's opinions in July 2009 and March 2011 did not relate back to the date last insured of June 30, 2006. (Tr. 27, 259, 301-02). *See Gibson*, 678 F.2d at 654 (recognizing that a claimant must establish he was disabled before his date last insured).

In light of the foregoing, the undersigned finds that the ALJ's listing analysis was not perfunctory, as alleged by Plaintiff. To the contrary, the ALJ explicitly identified the relevant listing as well as the relevant corresponding record evidence. Thereafter, he properly determined that Plaintiff's impairments failed to satisfy any relevant listing prior to the expiration of Plaintiff's inured status.[3] Accordingly, Plaintiff's first assignment of error should be overruled.

---

[3] Plaintiff also erroneously asserts that the ALJ failed to considered whether his impairments met or equaled the requirements of Listing 1.03, which requires evidence of "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b. The ALJ's decision clearly indicates that he considered this listing and found that the evidence did not establish that Plaintiff's impairments met the requirements for Listing 1.03. (*See* Tr. 27).

*2. RFC Determination*

Plaintiff's next assignment of error asserts that the ALJ's RFC determination is not substantially supported. Specifically, Plaintiff maintains that the ALJ improperly determined that Plaintiff was able to lift 25-50 pounds and failed to include all of the limitations resulting from Plaintiff's impairments.

The regulations provide that the final responsibility for determining a Plaintiff's RFC is reserved to the Commissioner and that "the RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical evidence and other evidence." 20 C.F.R. § 404.1527. Here, the ALJ determined that, prior to his last date insured of June 2006, Plaintiff retained the residual functional capacity to perform a reduced range of medium work. In making this finding, the ALJ noted that medical evidence establishes that Plaintiff is significantly more limited by his impairments today than was the case in 2006. However, the medical evidence up to the last date insured does not support Plaintiff's allegations that he was as limited in 2006 as he is today. This determination is substantially support by the record.

As noted above, the ALJ gave little weight to the interrogatories and testimony of the medical expert, as his opinion was formed on the mistaken belief that Plaintiff had a complete loss of spinal motion since 1992. Contrary to this assumption, the ALJ properly determined that Plaintiff's testimony and the medical evidence of records establish that Plaintiff did not suffer a complete loss of spinal motion and that he was able to engage in full-time employment through 2000.

The ALJ also gave little weight to the findings of Dr. Kahn, Plaintiff's treating

physician. As noted above, in 2009, Dr. Kahn found that Plaintiff could not heel or toe walk well, had a forward list, had no motion in the spine, and had diminished motion in his hips. (Tr. 259). At that time, Dr. Kahn diagnosed Plaintiff with ankylosing spondylitis affecting all joints with no spine motion, no rib motion, and significant involvement of the hips. (Tr. 259). Thereafter, in March 2011, Dr. Kahn opined that Plaintiff was permanently disabled. (Tr. 302). However, such opinions do not relate back to the date last insured of June 30, 2006. The ALJ recognized that Dr. Kahn limited Plaintiff to sedentary work in January and March 1993, but claimant returned to his job at P&G as a research technician. ( a job classified as medium work). Accordingly, the undersigned finds that the ALJ properly evaluated Dr. Kahn's findings. See *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (treating physician entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record). (internal citations and quotations omitted).

Plaintiff argues the x-ray report from May 2005 demonstrates that Plaintiff's thoracic spine had ankylosed even before his date last insured expired, and therefore, he would not have been capable of performing work at the medium level of exertion, particularly due to the restrictions on lifting and carrying that these impairments caused. Such assertion is unavailing. As detailed above, at that time the x-rays showed multiple right rib fractures of indeterminate age, but no left rib fractures. (Tr. 281). However, as noted by the ALJ, that same month, Dr. William S. Fenton noted that Plaintiff reported left upper back pain which began five weeks prior. (Tr. 252). Plaintiff's musculoskeletal exam showed some tenderness, but was otherwise within normal limits (Tr. 252). In August 2005, Dr. Fenton noted that Plaintiff was "generally a healthy guy." (Tr. 252). In November 2005, Plaintiff

made no complaints of back pain and Dr. Fenton indicated Plaintiff's neurological exam was intact. (Tr. 253).

Here, in assessing Plaintiff's RFC, the ALJ's decision indicates that he properly considered the medical evidence of record in determinating Plaintiff's RFC. (Tr. 24-27). The ALJ also expressly referenced Plaintiff's hearing testimony in his discussion of Plaintiff's present activities of daily living. (Tr. 26-27, 48). Accordingly, the undersigned finds that the ALJ's RFC is supported by the record and should not be disturbed.

*3.Credibility Assessment*

Plaintiff's third assignment of error asserts that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's credibility assessment improperly relied on Plaintiff's present daily activities and improperly determined that the record evidence did not support Plaintiff's complaints of disabling pain. Plaintiff's assertions again lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*  The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p,

13

and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

As recognized by the Sixth Circuit, in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability. *See Warner v. Com'r of Soc. Sec.,* 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Com'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir.2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds). Here, however, the ALJ found Plaintiff's testimony to be credible as it pertained to his present activities of daily living. The ALJ went on to not that "[l[ittle, if any, testimony was presented by the Claimant that actually described his activities of daily living and symptoms as they existed prior to the date last insured." (Tr. 27). Having reviewed the record, the Court must agree. Based upon this finding, the ALJ did not err in his credibility assessment. In addition, the ALJ's decision indicates that he thoroughly discussed the medical evidence, including x-rays, physical exam findings, and treatment notes that undermined Plaintiff's allegations that he was as limited on or before his date last insured in June 2006. (Tr. 27).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    _s/Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH A. ADAMS,                         Case No. 1:12-cv-823

    Plaintiff,                                Barrett, J.
                                              Bowman, M.J.
vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).